**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID VAUGHN GRIER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-3790** |
| | : | |
| **BLANCHE CARNEY**, *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**YOUNGE, J.**                                                                              **JANUARY 20, 2022**

      Plaintiff David Vaughn Grier, a pretrial detainee currently incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"), commenced this civil action by filing a civil Complaint pursuant to 42 U.S.C. § 1983, alleging constitutional claims based on the conditions of his confinement.  (ECF No. 2.)  Grier then filed a series of motions including a Motion for Amendment to Complaint which sought leave to amend the allegations and/or claims set forth in his initial Complaint.  (*See* ECF No. 6 at 3-5.)  By Order dated September 27, 2021, the Court granted Grier leave to file an amended complaint so that he could bring all of his allegations together in one pleading.  (ECF NO. 8.)  Grier filed his Amended Complaint on October 29, 2021.[1]  (ECF No. 9.)  Grier's Amended Complaint alleges various constitutional violations with citations to the First, Fifth, Sixth, Thirteenth, and Fourteenth Amendments to the United States

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading.  *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

Constitution. (ECF No. 9 at 11, 30-32, 34.) For the following reasons, on statutory screening required by 28 U.S.C. § 1915A, the Amended Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Grier will, however, be given an opportunity to file a second amended complaint as to certain claims.

## I.  FACTUAL ALLEGATIONS[2]

Grier has named the following Defendants in his Amended Complaint: (1) Blanche Carney (identified in the Amended Complaint as the Commissioner of the Philadelphia Department of Prisons ("PDP")); (2) Nancy Gianetti (identified as the Warden of CFCF); and (3) Correctional Officer Jackson (who held the "position of designated morning shift officer at A&B side law library" at CFCF). (ECF No. 9 at 6-7.) All Defendants are sued in their individual and official capacities. (*Id.* at 7.)

Grier asserts that the Defendants have failed "to disseminate . . . legally earned funds" in the amount of $900.00 to his inmate account as directed by the PDP "Inmate HandBook" for working as a "law library aide."[3] (*Id.* at 8.) Grier avers that the administrators have withheld

---

[2] The allegations set forth in this Memorandum are taken from Grier's Amended Complaint. The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

The Court notes that Grier's Amended Complaint is not pled in a manner that makes the basis for his claims clear to the Court. His Amended Complaint is lengthy, wordy, and confusing, with numerous "*infra*" and "*supra*" notations, requiring the reader to jump around within the pleading, thereby complicating this Court's ability to decipher his claims. (ECF No. 9.) To the extent that Grier's claims are decipherable, they are conclusory and not well pled. The Amended Complaint might have been easier to understand if Grier had expressed himself in simple language describing the "who, what, where, when and how" of the circumstances that cause him to seek money damages. *Ali v. Pennsylvania*, Civ. A. No. 21-CV-5580, 2022 WL 102398, at *3 (E.D. Pa. Jan. 11, 2022); *Overby v. Steele*, Civ. A. No. 21-5030, 2021 WL 6137026, at *5 (E.D. Pa. Dec. 29, 2021).

[3] Grier avers that his employment commenced on March 18, 2020 and "remains up to the adduced point of this formal civil complaint." (ECF No. 9 at 8.) He appears to have calculated the total amount owed by asserting that the biweekly amount of $22.50 was "agreed upon" and

"his funds for working as a 'law library aide' without reason, providing a preexisting substantiation in claim." (*Id.* at 14.)  The withholding of "his legally gotten funds . . . violated [his] rights and constitute[s] grounds to claim violation of [his] 7th constitutional right." (*Id.* at 28.)  He asserts "involuntary servitude pursuant to the 13th Amendment." (*Id.* at 11.)  Grier further avers that, not only has he been refused compensation, the administrative staff "banished him from his work place when the residing morning shift staff was changed" to C/O Walker. (*Id.* at 14-15.)

Grier avers that he has made numerous "formal and informal requests[s] to the body of staff" regarding the lack of payment "for his enlisted title as 'law librarian aide.'" (*Id.* at 10.)  He avers that despite having written a "volumonus [sic] measure of grievances for a multitude of different matters," he has "never once received a formal response." (*Id.* at 12-13.)  He asserts that "this, of itself, would validate a prejudice towards [his] person." (*Id.* at 13.)

Grier also asserts that "prejudicial targeting" has "abrogated [his] federal and state constitutional rights to prepare for trial" and has abolished his 'fundamental right'" of access to the law library. (*Id.* at 15, 34.)  Grier avers that "the law library is a 'fundamental right' which cannot be abrogated – insured by the 6th federal amendment of the United States Constitution." (*Id.* at 19, 34.)  There is also an assertion, albeit undeveloped, regarding CFCF's "refusal to hold any 'law library services.'" (*Id.* at 21.)  Finally, Grier asserts that he has shown actual injury because he cannot "correspond with counsel with no acess [sic] to paper or pens to write and no capita [sic] to purchase stamps to send." (*Id.* at 37.)

---

that 40 payable periods "have been voided from [him]" since the "inception of his hire." (*Id.* at 9.)

Grier avers with no supporting factual allegations that he "has been prejudicially targeted by the staff and administration" of CFCF. (*Id.* at 19, 29.)  He asserts "intentional prejudice and discriminatory targeting of his person" and cites the text of the 1st, 5th, 6th, and 14th Amendments. (*Id.* at 30-32, 34.)  In his prayer for relief, Grier seeks a "preliminary and permanent injunction ordering" Defendants to: (1) "disburst [sic] the $900.00 dollars owed to [him] so he can adequately prepair [sic] for courts matters;" (2) open the law library, so [he] may re-enter . . . to prepair [sic] for court matters;" and (3) allow him to "frequent the area, so he may adequately prepair [sic] for court matters." (*Id.* at 41-42.)  Grier also seeks a total amount of $95,000 in compensatory damages against the named Defendants for "mental anguish and suffrage" [sic] and "intentional negligence" with respect to the "refusal to open the demense . . . prejudicial targeting . . . and refusal to furnish his legally gotten earnings . . . [which has caused] an inability to effectively correspond with his stand by counsel." (*Id.* at 42-47.)  Grier also seeks $35,000 in punitive damages. (*Id.* at 47.)

Grier is currently awaiting trial on charges of murder, robbery, and possession of an instrument of crime with intent. *See Commonwealth v. Grier*, No. CP-51-CR-0004315-2018 (C.P. Phila. Cty.).  Public records indicate that the state court has appointed standby counsel to assist Grier with his state court criminal proceedings. (*Id.)*

## II.    STANDARD OF REVIEW

Grier has paid the filing fee for this case.  Nonetheless, because he is a prisoner the Court has the authority to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before

docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).  Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Grier is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

The Court reads Grier's Amended Complaint as bringing claims for violations of his civil rights pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Based on Denial of Access to the Courts

Grier asserts that "prejudicial targeting" has abolished his 'fundamental right'" of access to the law library. (ECF No. 9 at 15, 34.) He avers generally that CFCF has "refus[ed] to hold any 'law library services'" and asserts that he has shown actual injury because he cannot "correspond with counsel with no acess [sic] to paper or pens to write and no capita to purchase stamps to send." (*Id.* at 21, 37.)

A claim asserting restrictions on access to the prison law library is considered as an "access-to-the-courts" claim under the First Amendment. *See, e.g., Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz*, 532 F. App'x at 63 (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*.

Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

Grier generally alleges that CFCF has "refused" to hold "law library services," without any further information as to the specific type of services or the length of time the alleged refusal lasted. Grier does not provide any additional information about any claims he sought to pursue, and he makes no allegation that a nonfrivolous and arguable claim was lost due to the alleged refusal to hold library services. Without specific factual allegations about his claims or why Grier's inability to access the law library has prevented him from pursuing them, let alone an allegation that a nonfrivolous and arguable claim was lost, he has not stated a plausible claim for denial of access to the courts.

Grier also indicates that he cannot "correspond with counsel with no acess [sic] to paper or pens to write and no capita [sic] to purchase stamps to send." (ECF No. 9 at 21, 37.) It is not precisely clear what Grier means by this stray allegation, as he does not clarify what restrictions were in place that allegedly prevented him from accessing counsel, and there is no indication that he was prevented from communicating with counsel by phone. "Allegations of denial of telephone communication with counsel suggest a 'denial of access to the courts and interference with the Sixth Amendment right to counsel.'" *Randall v. Cty. of Berks, Pennsylvania*, Civ. A. No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (quoting *Richardson v. Morris Cty. Corr. Facility*, Civ. A. No. 06-2340, 2006 WL 3000234 (D.N.J. Oct. 20, 2006)). However, a pretrial detainee does not have unfettered telephone access to legal counsel, *King v. Quigley*, Civ. A. No. 18-5312, 2019 WL 416490, at *5 (E.D. Pa. Feb. 1, 2019), and access may be

satisfied by other means. *Randall*, 2015 WL 5027542, at \*17.  Additionally, "a pretrial detainee alleging a violation of his right of access to the courts must show that prison officials caused him past or imminent 'actual injury.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Grier's allegations, which do not even contend he sought to contact an attorney or that there was any adverse effect on his criminal case or any other legal proceeding, is not plausible since he does not allege that he suffered any actual injury or that his right to counsel was violated.

### B.  Claims Regarding Violations of the Inmate Handbook

At various points in the Amended Complaint, it appears that Grier contends certain portions of the "Inmate Handbook" were explicitly violated or not fully enforced.  (*See, e.g.*, ECF No. 9 at 4, 18-19, 21, 27, 35.)  To the extent Grier's Amended Complaint can be liberally construed to raise § 1983 claims against Defendants based on alleged violations of the Inmate Handbook, Grier cannot state a plausible claim.

"As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Bowman v. Wetzel*, Civ. A. No. 20-135, 2020 WL 3258946, at \*6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, Civ. A. No. 18-5444, 2019 WL 77441, at \*7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, Civ. A. No. 04-1697, 2006 WL 2528009, at \*7 n.7 (D.N.J. Aug. 31, 2006)).  Accordingly, to the extent that Grier seeks to assert any § 1983 claims against Defendants based on alleged violations of CFCF's Inmate Handbook, these claims will be

dismissed.  As amendment of these claims would be futile, the dismissal of these claims will be with prejudice.

### C.  **Claims Based on Grievances**

Moreover, to the extent that Grier alleges a violation of his rights solely with respect to the denial of or nonresponse to his grievances, this Court notes that claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, any facts alleged by Grier about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

### D.  **Claims Based on Prison Employment**

Grier asserts claims with respect to his alleged employment as a law library aide.  First, Grier avers that that the Defendants have failed "to disseminate . . . legally earned funds" in the amount of $900.00 to his inmate account.  (ECF No. 9 at 8, 11, 14, 28.)  Grier also contends that the administrative staff "banished him from his work place" and asserts that CFCF has "refus[ed] to hold any 'law library services,'" which may suggest that he was not permitted to work.  (*Id.* at 14-15, 21, 37.)  Grier's Amended Complaint fails to allege whether he was forced to work, the nature of the services that he performed, and the amount of time, if any that he worked.  The inconsistent allegations render the Court unable to determine whether Grier was deprived of the opportunity to work, whether he performed work without compensation, or whether he was forced to work.  Because the Court cannot discern the factual basis of Grier's claim regarding his prison job, Grier will be permitted to file a second amended complaint with respect to this claim.

In so doing, Grier should be mindful that inmates do not have a constitutional right to employment during incarceration.  *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (per curiam) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989))); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (per curiam) ("[P]risoners enjoy no protected interest in prison employment.").  Moreover, nothing in the Amended Complaint suggests that Grier was forced into involuntary servitude so as to state a claim under the Thirteenth Amendment.  *See United States v. Kozminski*, 487 U.S. 931, 942 (1988); *Tourscher v. McCullough*, 184 F.3d 236, 242 (3d Cir. 1999) (dismissal of complaint before service was premature where inmate held for a time as a pretrial detainee alleged that he was required to work in violation of Thirteenth Amendment).

### E. Equal Protection Claim

Grier asserts "intentional prejudice and discriminatory targeting of his person," and avers that he "has been prejudicially targeted by the staff and administration" at CFCF.  (ECF No. 9 at 19, 29, 30-32, 34.)  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  To the extent that his allegations may be read as asserting a claim

based on a "class of one" theory, Grier must allege he was intentionally treated differently from others similarly situated inmates and that there was no rational basis for the treatment.  *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).

Grier provides no allegation or factual support for his equal protection claim aside from the general allegation that his rights have been violated.  Because Grier has not alleged that he was treated differently from those similarly situated, his equal protection claim is not plausible.  *See Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 424 (3d Cir. 2000) ("Where there is no discrimination, there is no equal protection violation."); *Collura v. Disciplinary Bd. of Supreme Court of Pa.*, Civ. A. No. 11-5637, 2013 WL 4479141, at *7 (E.D. Pa. Aug. 22, 2013) ("Mr. Collura has failed to identify any similarly situated individual whom [Defendants] ha[ve] treated differently. . . .  Accordingly, Mr. Collura's Equal Protection claim amounts to mere 'general accusations' which are insufficient to prevail on a § 1983 claim."), *aff'd sub nom. Collura v. Maguire*, 569 F. App'x 114 (3d Cir. 2014).

### F.  Official Capacity Claims

Grier has sued the Defendants in their official as well as individual capacities.  (ECF No. 1 at 2-3.)  Official capacity claims are indistinguishable from claims against the entity that employs the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  To plead a basis for municipal liability under § 1983, a plaintiff must

allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Nothing in the Complaint plausibly suggests that the claimed constitutional violations stemmed from a municipal policy or custom, or municipal failures amounting to deliberate indifference. Rather, Grier's Amended Complaint consists entirely of conclusory allegations that his constitutional rights were violated. Accordingly, because Grier has not stated a plausible basis for a claim against any municipal entity, his official capacity claims against the named Defendants would not be plausible.

### G.  Individual Capacity Claims

To state a claim against a Defendant in a § 1983 action, a plaintiff must allege facts explaining that Defendant's involvement in the claimed constitutional violations. That is because "[a] defendant in a civil rights action must have personal involvement in the alleged

wrongs to be liable . . . ."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Grier provides no specific allegations about what the individual Defendants did to violate his constitutional rights.

Moreover, to the extent Grier sought to assert claims based on a supervisory liability theory against Commissioner Carney and Warden Gianetti, he should be mindful that there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.* Because Grier does not explicitly allege how each defendant was involved in the alleged deprivation of his rights, his Amended Complaint must be dismissed.  Because Grier does not explicitly allege the basis for a supervisory liability claim against Carney and Gianetti, these claims are also not plausible and will be dismissed.  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

**IV.     CONCLUSION**

For the foregoing reasons, the Court will dismiss Grier's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).  The Court will dismiss Grier's claims based on grievances and alleged violations of the Inmate Handbook with prejudice because the defects in those claims cannot be cured.  However, the Court will allow Grier to file a second amended complaint as to his remaining claims in the event he can allege additional information that would state a basis for a plausible claim against an appropriate defendant or defendants.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**


***/s/ John Milton Younge***
**JOHN M. YOUNGE, J.**
